## HOWARD DUNLAP v. C. BECKES & SON, *et al.*

1. ASSIGNMENT; *Misuse of Trust Funds; Facts Stated, a Good Defense.* In 1872, B. & Son made a general assignment to R. for the benefit of their creditors. R. was a member of the firm of R., D. & Co., then having a claim against B. & Son. Renewal notes were executed by B. & Son for this indebtedness, on August 6, 1873, payable thirty days after date. While the partnership of R., D. & Co. existed, certain portions of the trust fund were appropriated by R., D. & Co., with the consent of the assignee. Afterward the firm dissolved, and the renewal notes were transferred by indorsement by R., D. & Co. to D., a member of the late copartnership. In 1876, D. brought an action on the notes against B. & Son, to recover the amount due thereon. B. & Son alleged in answer, that the firm R., D. & Co., while the owners of the notes, with full knowledge of the trust, appropriated all the property assigned to R. to their own use and benefit, and that the value of the said property was largely in excess of all their indebtedness, including the notes sued on. *Held,* A good defense to the notes in the possession of D., and, if proved on the trial, plaintiff is not entitled to recover.

2. ERRONEOUS INSTRUCTION; *Distribution of Excess, Rule for.* On the trial of the action, the court directed the jury to deduct the value of the property converted by R., D. & Co. over and above the sum R. reported as received from his firm therefor, from the amount of the notes in dispute, and give the plaintiff a judgment for the balance; that if the value of the property in excess of the sum so reported by the assignee exceeded the amount of the notes, then they were to find for the defendants. *Held,* Error,

as such excess should be distributed *pro rata* among all the creditors of B. & Son, after the costs, expenses and compensation in the execution of the trust had been paid or provided for, and only the *pro rata* share of such excess ought to have been deducted from the amounts of the notes. If such *pro rata* share of the excess is less than the notes, the plaintiff will be entitled to a verdict for the balance. If the *pro rata* share exceeds the notes, or if the actual value of the trust property converted by R., D. & Co., together with the proceeds of the other trust assets, exceeds all the debts of the defendants, including the notes, and the costs, expenses and commissions of the execution of the trust, the verdict will be for the defendants.

### *Error from Chase District Court.*

DUNLAP filed his petition in the district court of Lyon county against the defendants, on February 3, 1876, to recover $691.77 upon two promissory notes. Caleb Beckes and Baxter Beckes were charged in the petition as ·makers and E. B. Peyton as indorser of the notes. The notes, executed August 6, 1873, and made payable thirty days from date, were indorsed and transferred to the firm of Riggs, Dunlap & Co. by E. B. Peyton, and afterward indorsed and transferred by Riggs, Dunlap & Co. to the plaintiff, one of the partners. On February 29, 1876, defendants, Caleb Beckes and Baxter Beckes, filed the following answer:

"Now come said defendants, Caleb Beckes and Baxter Beckes, late partners as C. Beckes & Son, by Ruggles & Sterry, their attorneys, and for answer to plaintiff's petition herein, say:

"1. That they admit the execution of the promissory notes set out in plaintiff's petition, and the indorsements of the same, but deny each and every other allegation in said petition contained.

"2. And for a second defense and offset and counter-claim, said defendants say that at and long after said notes set out in plaintiff's petition became due and payable, they and each of said promissory notes belonged to and were the property of a copartnership composed of said plaintiff and one S. B. Riggs and others, whose names are unknown to these defendants, under the firm-name and style of Riggs, Dunlap & Co.; and that on or about the 19th day of August, 1872, these defendants, by a deed of assignment of that date, executed by

these defendants and their wives, duly conveyed, assigned and delivered to S. B. Riggs, in trust for the use and benefit of all the creditors of these defendants, all of the property of these defendants, both real and personal, consisting of the following, amongst other property, to wit: Seventy acres of land in Lyon county, state of Kansas, being a part of the northwest quarter of section 23, township 19, range 12, of the actual value of $4,000; two grist mills, with all the machinery and gearing connected therewith, of the actual cash value of $2,000, and a twenty-five horse-power engine of the actual cash value of $2,000; one double saw-mill, of the actual cash value of $1,500; and one mill-house, of the actual cash value of $2,000; and accounts, log wagon, and other property, of the value of $2,000 — making a total sum or value of property assigned $13,500. That all of the debts of the defendants, including the ones sued on in this action, will not exceed the sum of $3,000, and the property so assigned as aforesaid was more than sufficient to pay all the debts of these defendants, including the promissory notes sued on in this action; that said S. B. Riggs, while the said firm of Riggs, Dunlap & Co. were the owners of said promissory notes, together with said plaintiff, converted all of the property so assigned to their own use, to the damage of these defendants in the sum of $13,500, which said S. B. Riggs and plaintiff promised to pay, and neglected and refused since to pay.

"Wherefore said defendants demand judgment against said plaintiff, that so much as may be necessary may be set off against said promissory notes to satisfy the same, if anything shall be found due thereon, and for judgment for the sum of thirteen thousand five hundred dollars as principal and interest from the date of conversion, as balance due and costs of this action."

On March 10, 1876, the plaintiff filed a reply, denying generally the allegations contained in the second count of the answer. On November 23, 1876, the case was taken to Chase county for trial, on a change of venue. At the May Term, 1878, of that court, the action was tried to the court with a jury. Upon the trial, the defendants, Caleb and Baxter Beckes, read in evidence a deed of assignment executed by them to S. B. Riggs on August 18, 1872, conveying to the latter all their property, real and personal, in trust for the use and benefit of their creditors. They then introduced testi-

mony tending to prove that at the date of the assignment their indebtedness did not exceed $3,000; that they then owed the firm of Riggs, Dunlap & Co., a firm composed of S. B. Riggs and Howard Dunlap; that the notes sued on were renewals of this indebtedness; that the grist-mill machinery, including a boiler and engine, (being a part of the property assigned,) were worth from $2,500 to $4,000; that their assignee, S. B. Riggs, had been offered $3,000 for the same, but had refused it.

On the part of the plaintiff, testimony was presented tending to prove that the total appraisement of all the property assigned by Beckes & Son was $3,495.70; that the property other than the grist-mill machinery, and boiler and engine, was sold for $1,214.70; that the assignee, S. B. Riggs, with the consent of a majority of the creditors of Beckes & Son, sold the grist-mill machinery and boiler and engine, in July, 1873, to his own firm, Messrs. Riggs, Dunlap & Co., for $1,500; that Riggs moved them to Peabody, in this state; that Riggs and Dunlap remained as partners till November 1, 1873, and as partners were the owners of the notes in suit; that on the dissolution of the partnership the plaintiff took the said notes at their face value and interest; that Riggs took the grist mill at $1,500; and that the indebtedness of Messrs. Beckes & Son at their assignment was over $4,400.

The plaintiff asked the court to instruct the jury: "You will take the grist-mill property at what the evidence shows you it was worth in the case—that is, what the assignee ought reasonably to have sold it for—and add to that sum the amount received by the assignee, $1,214.70; and if these two sums exceed all the debts owed by Messrs. Beckes & Son, and all taxes paid by the assignee, and a reasonable compensation to the assignee, then you will deduct that excess from the notes, and give plaintiff a judgment for the balance, if any balance remains." The court refused to give such instruction, but in its stead instructed the jury as follows:

"1. C. Beckes & Son gave the notes in question to Riggs, Dunlap & Co., and E. B. Peyton indorsed said notes. The

amount of the notes, with interest, less the credits thereon, is $860.75. Concerning this and the indorsement there is no dispute.

" 2. S. B. Riggs, of the firm of Riggs, Dunlap & Co., assigned his interest in the notes to Howard Dunlap, the plaintiff, and said assignment was made after the notes became due. As matter of law, then, whatever defense could have been set up against Riggs, Dunlap & Co. can be set up against the plaintiff, Howard Dunlap.

" 3. The defendants Beckes & Son, as a defense or equitable set-off, say that they made an assignment to S. B. Riggs for the benefit of their creditors, including Riggs, Dunlap & Co. That the property so assigned was amply sufficient to pay off all of the debts of said Beckes & Son, including the debt sued on; that said Riggs squandered or converted said property to his own use, and failed and refused to pay the debts of said Beckes & Son; that the firm of Riggs, Dunlap & Co. received a portion of the proceeds of said property; and ask, therefore, that so much as is necessary to cancel these notes be allowed to them in this action, and that they have judgment for their costs.

4. " If there is any squandering or conversion in this case, it is in the action of S. B. Riggs in selling to Riggs, Dunlap & Co. the grist mill, engine, etc., which was part of the property assigned, for $1,500; and the main important question of fact for you to determine is, was $1,500 the fair market value of said mill, engine, etc? If this was a fair market value, in cash, of said mill, then the plaintiff is entitled to recover a judgment for the balance due on said notes."

6. " If you find from the evidence, that the cash value of said grist mill, engine, etc. was more than $1,500, then you will deduct the value over and above said sum of $1,500 from the sum of $860.75, the amount due upon the notes, and give plaintiff a judgment for the balance. Should the amount of the value of said property in excess of $1,500 amount to more than the sum of $860.75, the amount due on the notes, then you will find for defendants."

A verdict was returned in favor of the defendants, Beckes & Son, and judgment rendered thereon against the plaintiff for costs. The plaintiff duly excepted, and brings the case here. The bill of exceptions states "that it was conclusively shown by the records in the case before the jury, that S. B.

Peyton was duly personally served with summons on February 7, 1876, by the sheriff of Lyon county." In the transcript annexed to the petition in error, no service is shown upon Peyton, and it appears therefrom that he neither answered nor otherwise appeared. No judgment was rendered either for or against him.

*J. J. Buck*, for plaintiff in error.

*Ruggles, Scott & Lynn*, for Beckes & Son, defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: There are several questions suggested by counsel in this case, but the only important ones to be determined are, whether the answer of Beckes & Son contained any defense to the petition of the plaintiff, and if it did, whether the trial court erred in its direction to the jury. As the answer charged that Riggs, the assignee of Beckes & Son, together with his partner, the plaintiff, with full knowledge of the trust, appropriated to their own use the trust property, it must be conceded, we think, that for such conversion the firm of Riggs, Dunlap & Co. (composed of S. B. Riggs and Howard Dunlap) were liable to some one for the actual value of the property thus converted. It is well settled that trustees cannot directly and openly, or secretly and covertly, sell themselves trust property; and even if the assignee intended to act in the utmost good faith in the disposition of the mill machinery, boiler and engine, belonging to the trust property, yet the sale was not valid, and the firm must account for the full value of the property so appropriated, regardless of the price agreed upon between the assignee and his firm, or rather between the assignee on behalf of the trust, of the one part, and the assignee, as the agent of Riggs, Dunlap & Co., of the other part. The assignment of Beckes & Son was in 1872. At the time of the conversion of the trust property, Riggs, Dunlap & Co. were the owners of the notes sued on. The suit on the notes was not commenced till 1876. A sufficient time had elapsed between the date of the assignment

and the commencement of this action ordinarily to close out the trust under the assignment. The answer alleged that the debts of Beckes & Son did not exceed $3,000, and that the property assigned by said firm was largely in excess of that sum ; and it further alleged that all the property was converted by Riggs, Dunlap & Co. If these allegations were proved true, a full defense would be established, as the plaintiff would have had no right to recover in his action. If the firm of Riggs, Dunlap & Co. have appropriated of the trust property, assigned for the benefit of all the creditors, sufficient to pay themselves and all other debts of the assignors, the mere transfer of the claim of Riggs, Dunlap & Co. to one of their members would not authorize such member to again recover thereon, or, in brief, to get a second payment of the claim.

Notwithstanding these views in regard to the sufficiency of the answer, the direction to the jury cannot be sustained. Upon the trial, the testimony showed that Riggs, Dunlap & Co. only appropriated the grist-mill machinery, together with a boiler and engine. All the other property was fairly and properly sold by the assignee. From such other property there was realized $1,214.70. The evidence as to the value of the grist mill, engine, etc., was very conflicting — varying all the way from $1,500 to $4,000.

In the sixth instruction given to the jury, the court seemed to assume, that with the *$1,500* which Riggs, Dunlap & Co. were to pay, or did pay to the assignee, said assignee had sufficient funds to satisfy all the debts of Beckes & Son, exclusive of the notes sued on, together with all the costs and expenses of carrying out the trust, for the direction was to deduct the value of the grist mill, engine, etc., over and above *$1,500*, from the amount of the notes in dispute, and give the plaintiff a judgment for the balance. If the value of this particular property in excess of $1,500, exceeded the amount of the notes, then they were to find for the defendants. We say the trial court must have assumed the facts above stated, otherwise the *$1,500* would have been as

much an off-set as the value of the grist mill, etc., in excess of that sum. If the instruction was not based upon this view, then it must have been based upon a theory equally as erroneous, viz.: that as the assignee only accounted for the sum of $1,500, for the value of the grist mill, etc., the creditors of Beckes & Son were only entitled to said sum as the value of the mill, and the true value, in excess of said sum, belonged to the latter firm. Whether given for the first or second reason, or any other, it misdirected the jury. The court had no right to assume as a fact, that the *$1,500,* added to the proceeds of the other property, were sufficient to pay the debts of Beckes & Son, exclusive of the notes sued on, as the testimony of the amount of the debts was conflicting; neither had the court the right to limit the interest of the creditors of Beckes & Son, in the mill, to $1,500, simply because the assignee had reported that sum as the price received from his firm. The excess over $1,500 should be distributed *pro rata* among all the creditors of Beckes & Son, in proportion to the original claims against them at the date of the assignment, first deducting from all the assets of Beckes & Son, the costs, expenses, and compensation of the execution of the trust, and only the *pro rata* share of such excess should be applied on the notes sued on, and deducted from the amount thereof. If the *pro rata* share of the excess was less than the notes, the plaintiff would be entitled to a verdict for the balance. If the *pro rata* share exceeded the notes, or if the actual value of the trust property converted by R., D. & Co., together with the proceeds of the other trust assets, exceeded all the debts of the defendants, including the notes, with the costs, expenses and commissions of the trust, the verdict ought to be for the defendants.

Under the circumstances, the assignors, Beckes & Son, in consequence of their continuing liability to the creditors, for whose benefit they executed the deed of assignment, and of their resulting trust, might have brought a suit to compel the assignee to account, but their interest in the property as-

signed being equitable merely, they had no right in this action to off-set the trust property against the claim of the plaintiff, except as a *pro rata* payment of the claim, in proportion to the original claims against them, or unless there was an excess of trust property appropriated by Riggs, Dunlap & Co. over and above the amount of the debts of Beckes & Son, and costs and expenses of the trust, exclusive of the notes. We have treated the plaintiff as though the action had been brought by Riggs, Dunlap & Co., as he, in fact, stands in their shoes.

A few words will dispose of the case, so far as the defendant in error E. B. Peyton is concerned. No judgment was rendered in the district court, either for or against him. In the transcript before us, outside of the bill of exceptions, which legitimately ought to contain only the decisions and proceedings of the trial court, not of record, it does not appear that Peyton was ever served with any summons in the case, or that he had any connection therewith, other than being charged as an indorser in the petition. Of course, therefore, the plaintiff in error has no right in this court to ask any order or judgment as against such defendant in error.

On account of the misdirection of the jury, the judgment of the district court will be reversed, and case remanded for a new trial between plaintiff and defendants, Caleb Beckes, and Baxter Beckes, late copartners as C. Beckes & Son. The costs will be paid by C. & B. Beckes, except the costs arising from making E. B. Peyton a party in this court, and these costs will be taxed against the plaintiff Howard Dunlap.

All the Justices concurring.